Winston agt. English.

# N. Y. SUPERIOR COURT.

## FREDERICK S. WINSTON agt. STEPHEN ENGLISH.

The object of allowing an examination to be had before issue joined, of an adverse party, under §391 of the Code is not to enable the plaintiff to ascertain whether he has a cause of action. but to enable him to obtain testimony in support of a cause of action, which he has good reason to believe he has, and especially of those facts of which he has reasonable grounds for believing the defendant has a peculiar knowledge, which he keeps concealed within his own breast.

Nor is it to enable a defendant to ascertain whether he has a defense, but to enable him to obtain testimony in support of a defense which he has good reason to to believe he has.

This case is an action for a libel, and the application for plaintiff's examination is made upon defendant's affidavit, which shows the service of a complaint upon him, but does not describe the nature of the libel. No copy complaint is attached, nor has any been submitted to the court.

The affidavit states that the defendant is advised that the examination of the plaintiff is necessary and material for the purpose of enabling him, the defendant, to frame his answer to the complaint, and to plead and prove the facts and circumstances sought to be discovered in justification or mitigation of damages. It also states what he expects to prove by such examination, and concludes by enumerating a great variety of matters.

But the defendant does not show by whom he has been advised, as stated—does not say that he has no knowledge or information sufficient to form a belief as to the matters charged against him, and yet does not disclose what knowledge or information he does possess. No facts are stated from which the materiality or necessity of such examination can be gathered.

As the case stands, the defendant has not only neglected to bring himself within the rules and practice of the court relative to the examination of a party under §391 of the Code before issue joined, but has failed to satisfy the court of the good faith of his application.

The examination of adverse parties and bills of discovery considered under the common law, the Revised Statutes, court of chancery, and the Code.

*At Special Term, February,* 1873.

JOHN K. PORTER and ROBERT SEWELL, *for plaintiff and motion.*

THOMAS DARLINGTON and T. C. T. BUCKLEY, *for defendant opposed.*

FREEDMAN, *J.*—This is a motion to vacate an order heretofore made, and a summons thereupon issued for the examination of the plaintiff, on behalf of the defendant, under §391 of the Code. The motion is made upon said order and summons, and the affidavit, upon which they were granted and issued respectively, and the grounds of the motion are :

1. That the affidavit aforesaid does not bring the case within the rules and practice of the court concerning the examination of parties before issue joined.

2. That the case is one in which such examination cannot be had ; and

3. That said order and summons were improvidently issued.

The proper determination of the questions involved in the points raised, requires a somewhat extensive examination of the course of legislation and the practice of the courts concerning applications for discovery and the examination of adverse parties.

In former times when the jurisdiction of the court of chancery and the courts of law was kept strictly separate, it often happened that a party had a full and perfect cause of action or defense to which the courts of law could apply an adequate and appropriate remedy, but that such remedy, by reason of the absence of legal proof to maintain the facts on which it was founded, but for the interference of a court of equity would entirely fail. The party against whom that remedy was sought, could, at law, in most cases, protect himself by his silence against a disclosure of those facts, and thus defeat both the legal and conscientious rights of his adversary.

But here, says Mr. Graham, in his valuable work on jurisdiction, the power of the court of chancery stepped in to prevent this injustice ; and acting as it did in all cases upon the conscience of the party, by compelling a discovery on oath, it placed in the possession of the court of law the means unattainable by the latter's form of proceeding—of

enforcing those rights, which would have otherwise remained entirely unprotected. The bill usually distinguished by the title of a bill of discovery, was a bill for the discovery of facts resting in the knowledge of the defendant named therein, or of deeds or writings, or other things in his custody or power, and seeking no relief in consequence of the discovery, though it usually prayed an injunction against the proceedings at law until the discovery was made. And although the more usual application was for a discovery in aid of an action really pending, yet the existence of the action was not considered indispensably necessary so that in case of *prima facie* ground for an action, the court considered itself at liberty to compel a discovery in aid of the action to be brought.

The exercise of the jurisdiction was restricted, however, by salutary rules intended to prevent its abuse. One of these was, that the complainant, in the bill, had to show the clear necessity of a discovery, and where the bill was, by a defendant at law, that the facts sought were material to his defense. For where the facts depended on the testimony of witnesses, and the court at law could compel their attendance, or where the court at law had the means of ascertaining the facts by examination of the same party, or by reference to records or otherwise, or where the assistance of a court of equity did not appear material or necessary to the support or defense of an action, chancery refused to interfere; so it would not sustain a bill of discovery merely to get admissions to be used in mitigation of damages in an action of trespass at law (*Gelston* agt. *Hoyt*, 1 *Johns. Ch.*, 543).

Another rule was, that the discovery sought, if made, should not subject the defendant in the bill to pains, penalties, or forfeitures, it being a fundamental doctrine of the court that equity does not assist the recovery of a penalty or forfeiture whether it flow from the act of the party himself or from the statute. The exceptions to this rule grew out of express statutory provisions, which, in certain cases,

specially limited the effect of the discovery to the object of the civil proceeding in aid of which it was sought.

Still another rule was, that the discovery should be for the attainment of an object which the court could approve. Hence, where such assistance was sought in support of an action brought to recover the amount of the plaintiff's expenditure in sumptuous entertainments to ladies of fortune, which the defendant had undertaken to pay, the objects of such entertainments having been the introduction of the latter with a view to an advantageous marriage. The court of Chancery in England refused to interfere (*King* agt. *Burr*, 3 *Meriv.*, 639).

So where such aid was sought for the purpose of defending an action upon a contract, which, though perhaps not strictly illegal as between the parties was injurious to the public, a discovery was refused (*Cousins* agt. *Smith*, 13 *Ves.*,542).

In the course of time a practice grew up at common law that where a plaintiff declared upon a written instrument the defendant might have a copy of it by taking out a summons before a judge at chambers, who, thereupon, made an order that a copy of the instrument be forthwith delivered to the defendant or his attorney, and that all proceedings in the action be stayed in the meantime. Lord MANSFIELD laid it down as a rule that if the papers, of which the inspection and leave to copy them is prayed, are such as the party could get at, or a bill in equity for a discovery, the application ought to be complied with at law to avoid the delay and expense of the remedy by bill. In the state of New York, however, the courts very much confined this principle, and until the Revised Statutes, chancery was, almost in all cases, resorted to when a discovery was required.

But under the Revised Statutes (2 *R. S.*, 199), power was conferred upon the supreme court by general rules to establish, modify, alter, and amend the practice in the said court in the cases not provided for by any statute (*Sec.* 19). The

21st Section empowered the court in all proper cases to compel any party, to a suit pending therein, to produce and discover books, papers, and documents in his possession or power, relative to the merits of any such suit, or of any defense therein.

The 22d section directed the court, by general rules, to prescribe the cases in which such discovery might be compelled, and the proceedings for that purpose not given by the statute. It also provided that therein the court should be governed by the principles and practice of the court of chancery in compelling discovery.

The 24th section provides that every such order for discovery may be vacated by the officer granting the same or by the court.

1. Upon satisfactory evidence that it ought not to have been granted.

2. Upon the discovery sought being made, and

3. Upon the party required to make the discovery, denying, on oath, the possession or control of the books, papers, or documents, ordered to be produced.

In pursuance of these statutory provisions the supreme court, by rules, determined the cases in which applications for discovery might be made in the manner pointed out by the Revised Statutes (*Rule* 28) and prescribed the nature of the proof to be furnished as to the necessity and materiality of the relief sought (*Rule* 29).

The original act being confined to the supreme court, it was afterwards extended to the superior court and the New York common pleas, both of which adopted, word for word, the rules of the supreme court in relation to the practice under it (*Laws of* 1830, 18, § 3; *Laws of* 1841, 22; *Superior Court Rules*, 72-75; *Common Pleas' Rules*, 32-35).

These statutory provisions and rules related exclusively to actions at law. But after the abolition of the court of chancery by the Constitution of 1846, and of the distinction between suits at law and in equity by the Code, they became

applicable to all cases, subject, however, to the power of the courts to alter, amend, and modify the same.

The remedy for obtaining discovery was still further enlarged by another provision of the Code, which empowers the court, before which an action is' pending, or a judge thereof, in their discretion, to order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy of any books, papers, or documents in his possession or under his control, containing evidence relating to the merits of the action or the defense therein (*Sec.* 388).

The distinction between the common law remedy of discovery, the remedy provided for by the Revised Statutes, and that of the Code, may, therefore, be briefly stated to be as follows :

1. At common law the power of the court to compel the production of writings in actions pending, was confined to those which were the foundation of the action. Being evidentiary only, was not enough.

2. The Revised Statutes and the rules of court, made in pursuance thereof, embrace all writings, which, in any way, relate to the merits, provided their production could formerly have been enforced by bill in chancery.

3. Section 388 of the Code, on the other hand, leaves pretty much everything but the nature of the writings to the discretion of the court. These must either be, or contain evidence, relating to the merits of the action or the defense therein.

The difference in the consequences of a refusal to comply with the order under these different remedies, does not require to be considered here.

Next in order, it is to be noticed, that the Code abolished the action to obtain discovery, under oath, in aid of the prosecution or defense of another action (*Sec.* 389), and substituted therefor, as an additional and cumulative remedy to those already noticed, the examination of a party as a wit-

ness on behalf of the adverse party, so that now a party
may examine his adversary as a witness in the same manner
as any other witness, either at the trial conditionally or upon
commission (*Sec.* 390), and the examination, instead of being
had at the trial may even be had at any time before trial, at
the option of the party claiming it (*Sec.* 391). The exam-
ination, when thus taken before trial, is to be filed in the
same manner as the examination of a witness taken *de bene*
*esse* is required to be filed, and may, thereupon, be read
by either party on the trial (*Sec.* 392).

These provisions altered only the mode of obtaining a
discovery, and they abolished only the form, but not the
nature of the relief formerly obtained by bill. The rules
and practice of the courts which were not inconsistent with
the changes introduced by the Code, were expressly con-
tinued in force (*sec.* 389 *of* 1848), and that section was subse-
quently amended so as to continue the power of the courts
to relax, modify, or alter the same (*sec.* 469, *as amended in*
1849). Provision was also made for a convention of judges
to make general rules to carry into effect the provisions of
the Code, and such other rules, not inconsistent with the
Code, as might be deemed proper (*sec.* 470 *as added in*
1849). By an amendment of this section in 1851, another
convention of judges was directed to be held to revise the
said rules, and by a second amendment, made in 1852, it
was further provided, that the convention should consist of
the judges of the supreme court, of the superior court of
the city of New York, and of the court of common pleas
for the city and county of New York; that the same should
meet every two years, and at every such meeting should
revise the general rules and make such amendments thereto,
and such further rules, not inconsistent with the Code, as may
be deemed necessary to carry it into full effect.

The courts, therefore, continued to regulate by rule the
cases, and the manner, in which a discovery could be had, and
the nature and extent of the proof to be submitted on the

making of the application. But no rule concerning the application for the examination of a party before trial, under section 391, was enacted until 1870. In the absence of such a rule the practice of several of the courts soon commenced to differ.

While the supreme court held that under that section a party cannot be examined before issue joined (*Bell* agt. *Richmond*, 50 *Barb.*, 571), this court maintained that in case of clear necessity, the examination may be had immediately after the service of the summons (*McVickar* agt. *Greenleaf*, 4 *Robts.*, 657, *S. C., sub nom.* ; *McVickar* agt. *Ketchum*, 1 *Abb., N. S.*, 452).

In the last named case the necessity existing for an immediate examination was conceded, provided the right to the examination existed, which was denied. The necessity arose from the circumstance that the defendant, Edward B. Ketchum, was about to plead guilty to an indictment, and that the entry of such plea had been postponed, with the sanction of the court in which the indictment was pending, for the purpose of allowing his testimony to be taken in civil suits.

But, although the decision was in favor of the immediate right of examination, the court, nevertheless, directed that the examination should proceed after service of a copy of a verified complaint. *Fullerton* agt. *Gaylord* (7.*Robts.*, 551), was decided upon the authority of *McVickar* agt. *Ketchum*. In *Duffy* agt. *Lynch* (36 *How.*, 509), however, it was further held in this court, that to prevent abuse, a party applying for the examination of his adversary before issue joined must show by affidavit, with as much particularity and certainty as his own knowledge, or information from others will permit, the facts which will enable the court to restrict the examination within reasonable limits, and to rule intelligently upon objections taken to questions propounded.

This conflict of judicial opinion continued to exist until the passage of the 21st rule adopted by the convention of

judges, which met pursuant to the requirements of chapter 408 of the laws of 1870.

The rule is as follows; "The application for an examination, under section 391 of the Code, shall be upon an affidavit disclosing the nature of the discovery sought, to enable the party to frame his complaint or answer, or to prove his case or defense upon the trial, and how the same is material in aid of the prosecution or defense."

In connection with this rule the said convention re-enacted the 14th, 15th, 16th and 17th rules of 1858 as rules 18, 19, 20 and 22 of the new revision, but with an amendment to the 15th as an additional safeguard against abuse. Prior to 1858 the said rule had read as follows:

"The moving papers on the application for such discovery shall state the facts and circumstances on which the same is claimed, and shall be verified by affidavit, stating that the books, papers and documents whereof discovery is sought, are not in the possession nor under the control of the party applying therefor."

To that the following addition was made in 1858:

"The party applying shall show to the satisfaction of the court, or judge, the materiality and necessity of the discovery sought, and the particular information which he requires."

And to this the convention of 1870 made the further addition:

"And that there are entries in the book or paper referred to of the matter he seeks a discovery of."

Thus it will be seen that while the legislature, representing the progressive power of the state, from time to time extended the right of discovery to new classes of cases, and provided new and additional remedies for securing it; it constantly looked to the courts as the representative power of the conservative element, for the prevention of the abuse of the letter of the law in individual cases. In the discharge of this duty the courts always were and still are governed,

in case of doubt, by the principles and practice which prevailed in the court of chancery.

Whenever, therefore, a party applies, under sec. 391, after issue joined, for the examination of the adverse party as to matters within the issues, the application is usually granted as a matter of course and of absolute right. In such case slight evidence is sufficient to satisfy the court as to the materiality of the discovery sought.

But when the examination is sought at an earlier stage, where the danger of abuse is imminent, and the difficulty of restricting the examination within reasonable limits great, the court is bound to ascertain by evidence, not only that the examination is material, and how it is material, but also that it is made in good faith, and for a necessary and proper purpose.

If all this is shown affirmatively, the examination is a matter of right, but otherwise not.

For the object of allowing the examination to be had before issue joined, is not to enable a plaintiff to ascertain whether he has a cause of action, but to enable him to obtain testimony in support of a cause of action, which he has good reason to believe he has, and especially of those facts of which he has reasonable grounds for believing the defendant has a peculiar knowledge, wh'ch he keeps concealed within his own breast (36 *How.*, 509).

Upon the same principle the examination cannot be had to enable a defendant to ascertain whether he has a defense, but to enable him to obtain testimony in support of a defense, which he has good reason to believe he has.

One of the great benefits to be expected from the examination of the parties, say the learned codifiers, is the relief it will afford to the rest of the community, in exempting them, to a considerable degree, from attendance as witnesses to prove facts which the parties respectively know, *and ought never to dispute, and would not dispute, if they were put on their oaths (Rep. of Com. on Pr. and Pl.,* 244)

Now the case under consideration is an action for libel, and the application for plaintiff's examination is made upon defendant's affidavit, which shows the service of a complaint upon him, but does not describe the nature of the libel. No copy of the complaint is attached, nor has any been submitted on this motion. In fact, both parties have seen fit to withhold from me the facts constituting the libel. The affidavit states that the defendant is advised that the examination of the plaintiff is necessary and material for the purpose of enabling the defendant to frame his answer to the complaint, and to plead and prove the facts and circumstances sought to be discovered in justification or in mitigation of damages. The defendant also swears that he expects to prove by the examination of the plaintiff the substantial truth of all the allegations averred to have been made or published by the defendant concerning the plaintiff. And thereupon the affidavit concludes with the enumeration of a great variety of matters respecting which discovery is sought.

But the defendant does not show by whom he has been advised as stated. He does not say that he has no knowledge or information sufficient to form a belief as to the matters charged against him, and yet he does not disclose what knowledge or information he does possess. He is silent even as to his belief in the premises. No facts are stated from which the materiality or necessity of the proposed examination can be gathered, nor is it alleged or shown that the plaintiff has a peculiar knowledge of the facts and circumstances sought to be discovered. On the contrary, most of them, if true and relevant, appear to be susceptible of easy proof by quite a number of other witnesses. And beyond all that it can be plainly seen that the defendant, if really desirous of relying on the truth of the libellous matter published as a defense already possesses all the knowledge or information which he requires for putting in a plea of justification or of mitigating circumstances, especially as

the Code permits him to do it on mere information and belief.

Courts protect character, and, therefore, they will not assist in giving increased publicity to scandalous matter except when absolutely necessary for the promotion of justice. A man who publishes a libel should be in a condition to prove it. Consequently, if the doctrine exists at all, that a party may first publish a libel and then examine the person injured for the purpose of proving out of the latter's mouth the truth of the charge, which, however, has been denied in several instances, it certainly should not be extended except in case of clear and absolute necessity beyond the rule laid down in *Marsh* agt. *Davison*, *(9 Paige, 580)*, where it was said, that in order that a defendant in a libel suit may have a discovery to aid his defense he must state a good defense, and then show the materiality of the discovery.

It is claimed, however, that whatever the rule may be it should be relaxed whenever it is made to appear that the defendant published the libel in the course of the publications of a newspaper, and the suggestion was made, that such is the fact, in the case before me. Although there is no evidence to this effect, I have, nevertheless, considered the point. In this connection I will state that I am not one of those who believe that unlimited liberty of speech, or of the press, is improper because productive in certain states of society of disastrous results. It is to the abnormal condition of the body politic that all evils arising from an unrestrained expression of opinion must be attributed and not to the unrestrained expression itself. Under a sound social regime and its accompanying contentment nothing is to be feared from the most uncontrolled utterance of thought and feeling. That which is really contemptible ought, therefore, to be exposed to contempt, and, consequently, derogatory charges of public importance ought to have full publicity. To argue otherwise is to take up the Machiavellian position, that it is right for the legislature to be an imposture, an organized hypocrisy ;

that *it is* necessary for a nation to be cheated by the semblance of virtue when there is no reality ; that public opinion ought to be in error rather than in truth, or that it is well for the people to believe a lie. For these reasons it is my profound conviction that the freedom of the press, the right of journalists to discuss matters of public concern, can hardly be too zealously guarded, and that in this country, more than in any other, the public press has a great mission to fulfill ; but in order to accomplish such mission the press must not only remain fearless and independent, but on the side of truth and justice.

A publication on a subject, which, though public, affects the character and good name of a citizen, must be fair criticism. If it is such the publication will be held to belong to the class of conditionally privileged communications. By this I mean to say, that the *prima facie* presumption of malice which would exist, from the language used, but for the occasion of such use is rebutted. But this privilege is qualified and conditional. It cannot be used for purposes of revenge nor to gratify personal spite. It is not a privilege to make a statement which the publisher does not believe to be true, and if he volunteers to defame another in a matter in relation to which he has no duty nor interest as a legitimate part of his business to furnish the news of current events, such officious defamation ought to be presumed false and malicious till he proves its truth, and such is the law. No benefit can accrue to defendant's present position from any of these considerations.

As the case stands at present the defendant has not only neglected to bring himself within the rules and practice of this court relative to the examination of a party under sec. 391 of the Code before issue joined, but has failed to satisfy me of the good faith of his application.

For these reasons the order and summons heretofore made and issued must be vacated with $10 costs to plaintiff.